USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #_____
DATE FILED: 6/9/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PROSPECT FUNDING HOLDINGS, LLC,

                            Plaintiff,

                - against -

HOWARD VINSON, JONATHAN D. SPEISER,
JERRY PILGRIM, NEIL FLIT, and THE LAW
OFFICES OF NEIL FLIT,

                            Defendants.

**OPINION AND ORDER**

15 Civ. 3331 (ER)

Ramos, D.J.

       Plaintiff Prospect Funding Holdings, LLC ("Prospect") brings this diversity action alleging breach of contract, unjust enrichment, promissory estoppel, breach of the duty of good faith and fair dealing, negligent misrepresentation, money had and received, and conversion. Pending before the Court is Defendant Jerry Pilgrim's Motion to Dismiss under Rule 12(b)(2), or in the alternative, 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 32. Also pending is Prospect's Motion to Amend under Rule 15(a). Doc. 63. For the reasons set forth below, Defendant Pilgrim's Motion to Dismiss under Rule 12(b)(2) is GRANTED. Because the Court grants dismissal under Rule 12(b)(2), the Court does not reach the Rule 12(b)(6) issue. Prospect's Motion to Amend under Rule 15(a) is DENIED.

I. **Factual Background**[1]

Prospect is a New York limited liability company. First Amended Complaint ("Am. Compl.") (Doc. 12) ¶ 1. Prospect is in the business of purchasing the contingent interest of plaintiffs in pending litigation. *Id.* ¶ 8. Pursuant to the terms of the typical funding agreement between Prospect and a plaintiff, the plaintiff does not owe any money to Prospect if he fails to recover any money from the litigation. *Id.* ¶ 9. If the plaintiff does recover, Prospect is paid according to a fee schedule included in the funding agreement. *Id.* ¶ 10. Jerry Pilgrim ("Pilgrim") is an attorney and a citizen of Georgia. *Id.* ¶ 5.

Prospect alleges that Howard Vinson ("Vinson") requested funding from Prospect in connection with a personal injury action in Georgia in December 2013. *See id.* ¶¶ 11–12. Prospect agreed to advance the sum of $10,560.00 plus $1,800.00 in fees to Vinson. *Id.* ¶ 20. This transaction was memorialized in a funding agreement signed on December 30, 2013, that consisted of three documents: (1) an agreement to assign proceeds, (2) an irrevocable letter of direction, and (3) an attorney acknowledgment (the "First Funding Agreement"). *Id.* ¶¶ 21–22. Vinson's personal injury attorney at the time, Jonathan Speiser ("Speiser"), signed the attorney acknowledgment on December 30, 2013. *Id.* At that time, Speiser was an attorney at the Law Offices of Neil Flit, which Prospect has also named as a defendant in this action. *Id.* ¶ 3.

The First Funding Agreement described the obligations of the parties pursuant to the contract, namely that if Vinson recovers in the personal injury litigation, he instructs his attorney

---

[1] The following facts are drawn from allegations contained in the Amended Complaint (Doc. 12), which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court can also consider Prospect and Pilgrim's accompanying submissions (Docs. 33, 53, and 56), in considering Pilgrim's Rule 12(b)(2) motion. *See Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, No. 11 Civ. 420 (RJH), 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012) ("[A] court may consider documents beyond the pleadings in determining whether personal jurisdiction exists . . . .").

to pay Prospect the amount it is due prior to any final distribution of money to Vinson.[2] Doc. 53 at 4. The agreement contains a forum selection clause indicating that all disputes arising out of or related to the agreement shall be governed by New York law and shall be litigated only in New York. *See* Am. Compl. ¶ 7.

In January 2014, Vinson requested additional funding from Prospect. *Id.* ¶ 27. Prospect agreed to advance an additional sum of $2,625.00 and $525.00 in fees, and the parties memorialized the transaction in a second funding agreement dated January 24, 2014 (the "Second Funding Agreement"). *Id.* ¶¶ 28–29. The Second Funding Agreement is substantially similar to the First Funding Agreement, including the same terms regarding priority of payment to Prospect, as well as an identical forum selection clause. *See id.* ¶¶ 7, 29–30.

Vinson changed lawyers in June 2014, dismissing Speiser and the Law Offices of Neil Flit while retaining Pilgrim. Doc. 33 at 1. Prospect learned about the change in representation shortly thereafter. *See* Am. Compl. ¶ 38. Prospect alleges that on July 9, 2014, it notified Pilgrim via facsimile and U.S. mail that Prospect had provided Vinson pre-settlement advances against his personal injury claims on two occasions and that Prospect held a priority lien in any settlement. *Id.* ¶ 39.

Meanwhile, according to Pilgrim, the personal injury action settled for the sum of $62,000 during a mediation that took place on June 26, 2014.[3] *See* Def.'s Answer ¶ 43; Doc. 33 at 1–2. Pilgrim alleges that at the time of the mediation and settlement, he was not aware of the Funding Agreements. Def.'s Answer ¶ 43; Doc. 62 at 2.

---

[2] The instruction is part of the "Irrevocable Letter of Direction" in the Funding Agreement. In the letter, Vinson directs Flit to pay Prospect the amount it is due in the event of settlement.

[3] According to Pilgrim, he reviewed and approved a "General Release and Indemnity Agreement" for Vinson in connection with the settlement on July 15, 2014.

3

Sometime before July 24, 2014, Prospect learned that a settlement may have been reached in the personal injury action. Am. Compl. ¶ 40. Prospect again contacted Pilgrim to inform him about the Funding Agreements.[4] *Id.* ¶ 41. Prospect later learned that Vinson had settled the personal injury action. *See id.* ¶ 44.

Upon settlement, Pilgrim placed the settlement money in a trust account, then disbursed some of the settlement amount to Vinson. *See* Doc. 33 at 2; Doc. 53 at 6. According to Prospect, Pilgrim retained a portion of the settlement money held in trust to pay another obligation Vinson owed. Doc. 53 at 6. Vinson did not pay Prospect any portion of the amount it was due pursuant to the Funding Agreements. Doc. 12 ¶ 47.

## II. Procedural Background

Prospect filed suit against Pilgrim, Speiser, and Vinson on April 29, 2015, alleging, *inter alia*, that the Defendants failed to pay Prospect in accordance with the Funding Agreements. Doc. 1. Pilgrim filed his answer to the Complaint on May 29, 2015, Doc. 5, asserting that the Court lacked personal jurisdiction over him. *Id.* ¶ 1. Prospect filed an amended complaint on September 10, 2015, naming Neil Flit and the Law Offices of Neil Flit as additional defendants. Doc. 12. Prospect brought a separate action against Neil Flit and the Law Offices of Neil Flit on February 12, 2016, alleging attorney malpractice, breach of fiduciary duty, constructive fraud, breach of written contract, unjust enrichment, promissory estoppel, breach of the duty of good faith and fair dealing, negligent misrepresentation, money had and received, and conversion. *Prospect Funding Holdings, LLC v. Flit, et al.*, 16 Civ. 1101 (ER). The Court granted a motion by Prospect to consolidate the two actions on July 28, 2016. Doc. 30.

---

[4] During his deposition, Pilgrim testified that he first learned about the Funding Agreements from Prospect after the June 26, 2014 mediation and settlement of the personal injury action, but before he disbursed the settlement money to Vinson. *See* Doc. 57, Exhibit A at 3.

4

On July 12, 2016, Pilgrim filed the instant motion to dismiss, alleging lack of personal jurisdiction and, in the alternative, that Prospect failed to state a claim. Doc. 33.

On November 30, 2016, Prospect filed a motion to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a), Doc. 66, seeking to add a claim for tortious interference with contractual relations against Pilgrim. *Id.* at 1. Prospect alleges that it discovered facts during Pilgrim's deposition that support the claim, namely that Pilgrim had knowledge of the Funding Agreements before disbursing the settlement proceeds and that Vinson had expressed to Pilgrim his desire to not satisfy his legal obligations under the Funding Agreements. *Id*. at 3.

## III. Legal Standards

### A. Rule 12(b)(2) Motion to Dismiss: Lack of Personal Jurisdiction

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). To meet this burden, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). The court construes all of the plaintiff's allegations as true and resolves all doubts in its favor. *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would lack the factual specificity necessary to confer jurisdiction." *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL

5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (internal quotation marks and citations omitted). As stated, courts may rely on additional materials outside the pleading when ruling on 12(b)(2) motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

When the Court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint. *See Darby Trading,* 568 F. Supp. 2d at 335; *Yellow Page Sols. Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 Civ. 5663 (MM), 2001 WL 1468168, at *3 (citing *Rationis Enter., Inc. v. AEP/Borden Indus.*, 261 F.3d 264, 267–68 (2d Cir.2001)). As the jurisdictional issue is decisive here, the Court does not reach Pilgrim's Rule 12(b)(6) argument.

B. **Rule 15(a) Motion to Amend**

Parties are entitled to amend their pleadings once, as a matter of course, within 21 days after serving the pleading or, if a responsive pleading is required, within 21 days after service of a responsive pleading or a Rule 12 motion. Fed. R. Civ. P. 15(a)(1). A party may not otherwise amend its pleading without either the written consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The Supreme Court has held that it would be an abuse of discretion, "inconsistent with the spirit of the Federal Rules," for a district court to deny leave without some justification, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Leave to amend may be denied on the basis of futility if the proposed claims would not withstand a Rule 12(b)(6) motion to dismiss. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). The party opposing the amendment has the burden of establishing its futility. *Blaskiewicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

## IV. Discussion

### A. Rule 12(b)(2) Motion to Dismiss: Lack of Personal Jurisdiction

Prospect asserts that the Court has personal jurisdiction over Pilgrim because he is bound by the forum selection clause contained in the Funding Agreements, despite the fact that Pilgrim is not a party to the Funding Agreements. Doc. 53 at 7. In *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009), the Second Circuit held that "the fact [that] a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum-selection clause." It is well established in this Circuit that a non-signatory may enforce a forum selection clause against a signatory where the non-signatory is "closely related" to a signatory. *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) ("We hold that a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory."); *Thibodeau v. Pinnacle FX Investments*, No. 08 Civ. 1662 (JB), 2008 WL 4849957, at *5 n. 4 (E.D.N.Y. Nov. 06, 2008) (acknowledging that a non-signatory may invoke the forum selection clause if the party is "closely related" to the signatory) (internal quotation marks and citations omitted); *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369 (S.D.N.Y.2011) (allowing a non-signatory to bind a signatory where they are "sufficiently close so that the non-party's enforcement of the forum selection clause is foreseeable by virtue of the relationship between the

7

signatory and the party sought to be bound.") (internal quotation marks and citations omitted). However, the Court faces the opposite situation here—a signatory seeking to enforce a forum selection clause against a non-signatory.

While the Second Circuit has not reached the question of when a signatory may enforce a forum selection clause against a non-signatory, a number of district court cases in this Circuit have embraced the "closely related" standard in cases analogous to this one. *See, e.g.*, *MGM Studios Inc. v. Canal & Distrib. S.A.S.*, No. 07 Civ. 2918 (DB), 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010) ("Under New York law, a signatory to a contract may invoke a forum selection clause against a non-signatory if the non-signatory is closely related'to one of the signatories . . . .") (internal quotation marks and citations omitted); *Kahala Corp. v. Holtzman*, No. 10 Civ. 4259 (DC), 2010 WL 4942221, at *3 (S.D.N.Y. Dec. 03, 2010) ("Under New York law, a forum selection clause may be enforced against a non-signatory who is closely related to the dispute such that enforcement of the forum selection clause against him is foreseeable.") (internal quotation marks and citations omitted); *In re Refco Inc., Securities Litigation*, No. 08 Civ. 3086 (JSR), 2009 WL 5548666, at *10 (S.D.N.Y. Nov. 16, 2009) ("After *Aguas*, there can be no dispute that forum selection clauses will be enforced even against non-signatories where they meet the 'closely related' standard."); *Great Northern Ins. Co. v. Constab Polymer–Chemie GmbH & Co.*, No. 01 Civ. 0882 (NM), 2007 WL 2891981, at *8 (N.D.N.Y. Sep. 28, 2007) (finding that a non-signatory may be nevertheless bound by the clause if the non-signatory "is closely related to the dispute such that it becomes foreseeable that it will be bound.") (internal quotation marks and citations omitted); *Nanopierce Tech., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767 (LS), 2003 WL 22882137, at *5–6 (S.D.N.Y. Dec. 4, 2003) (enforcing a forum

selection clause against a non-signatory corporate officer who was held to be closely related to the corporation). Therefore, the Court will proceed to apply this framework to the instant case.

In determining when a non-signatory is bound, courts in this Circuit "look at whether the non-signatory is so closely related to the dispute . . . that it becomes foreseeable that it will be bound [by the forum selection clause]." *Leviton Mfg. Co. v. Reeve,* 942 F. Supp. 2d 244, 257 (E.D.N.Y. 2013) (internal quotation marks and citations omitted); *see Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc.*, No. 10 Civ. 5715 (DF), 2013 WL 3388427, at *13 (S.D.N.Y. July 1, 2013) ("Courts have held that forum-selection clauses can be enforced against non-signatories who are closely related to a signatory, such that enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound.") (internal quotation marks and citations omitted); *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369 (S.D.N.Y. 2011) (finding non-signatory defendants to be closely related where they were affiliates of the signatory hired to carry out its contractual obligation). "[T]he enforcement of the forum selection clause against the non-party must have been foreseeable prior to suit, which implies that the non-signatory must have been otherwise involved in the transaction in some manner." *Recurrent Capital Bridge Fund I, LLC v. ISR Systems and Sensors Corp.*, No. 12 Civ. 772 (SAS), 2012 WL 2402621, at *5 (S.D.N.Y. June 25, 2012).

Prospect argues that Pilgrim is so closely related to Vinson and his dispute with Prospect that he should have reasonably foreseen that his disbursement of the settlement proceeds to Vinson would involve him in a contract dispute with Prospect. *See* Doc. 53 at 7. As a preliminary matter, the Court notes that Prospect misstates the "closely related" standard as developed in this Circuit. The relevant question in deciding whether a non-signatory is "closely

9

related" is whether it was reasonably foreseeable that the non-signatory would be bound by the forum selection clause, *not* whether a contractual dispute with a signatory was reasonably foreseeable, as Prospect suggests.

Nonetheless, the Court finds that Pilgrim is not sufficiently "closely related" to the signatories and their dispute so that enforcement of the forum selection clause was foreseeable by Pilgrim. Pilgrim played no role in the funding transactions between Prospect and Vinson, and came to represent Vinson months after the Funding Agreements had been finalized. Indeed, Prospect's own pleadings and submissions suggest that Pilgrim learned of the existence of the Funding Agreements only a few days before Vinson settled his personal injury action in Georgia.

The vast majority of cases that have found a non-signatory bound by a forum selection clause under the theory that they are "closely related" to the signatory or the dispute have done so where the non-signatory had an active role in the transaction between the signatories or where the non-signatory had an active role in the company that was the signatory. *See Leviton* 942 F. Supp. at 259 (collecting cases). Pilgrim does not fall into either category. To be sure, several courts outside this Circuit have relied on the "closely related" theory to find that forum selection clauses bind non-signatory attorneys representing claimants in litigation funding agreements similar to the ones involved here. *See, e.g., Cambridge Management Group, LLC v. Baker*, No. 12 Civ. 3577 (NLH), 2013 WL 1314734, at *11 (D.N.J. Mar. 28, 2013) (finding that the attorney who signed the attorney acknowledgement in a litigation funding agreement was "closely and directly related to the contractual relationship between the [claimants] and the [funding company]"); *Lawyers Funding Group, LLC v. White*, No. 14 Civ. 2962 (BS), 2015 WL 921588, at *6 (E.D. Pa. Mar. 4, 2015) (finding that lawyers had a "close and direct relationship" with the purchase agreement that justified subjecting them to the forum selection clause contained

10

therein, where the purchase agreement imposed certain duties on the lawyers, which they expressly agreed to perform by executing attorney acknowledgements). Unlike the attorneys in these cases, however, Pilgrim had no involvement in the Funding Agreements and did not take on any obligations under the Agreements. Rather, it was Speiser who represented Vinson in those transactions and signed the attorney acknowledgments. While it may have been foreseeable that Speiser would be bound by the forum selection clause in the Funding Agreements, the same is not true as to Pilgrim. Thus, the Court finds that Pilgrim is not sufficiently "closely related" to Vinson to be bound by the forum selection clause.

Prospect also asserts an alternative basis for personal jurisdiction—that Pilgrim has submitted to the Court's jurisdiction by substantially participating in the litigation. Doc. 53 at 11. Prospect relies on two New York state cases to argue that "when a defendant participates in the merits of a lawsuit, they submit to the court's jurisdiction." Doc. 53 at 11. However, the cases that Prospect cites are distinguishable from this case in important ways.

First, the defendants in the cases that Prospect cites challenged personal jurisdiction because they were not served with process. *See Taveras v. City of New York*, 108 A.D.3d 614, 617, 969 N.Y.S. 2d 481 (2013) (noting that defendants' attorney appeared "informally" and defendants participated in the action, even though plaintiff never personally served the defendants with summons and amended complaint); *Feola v. Moore McCormack Lines, Inc.*, 173 A.D.2d 256, 569 N.Y.S.2d 653 (1991) (observing that despite plaintiff's failure to serve summons and complaint, defendant fully participated in the action for almost eleven years without raising any jurisdictional objections). In deciding whether defendants have forfeited personal jurisdiction challenges by participating in the merits of a lawsuit, the Second Circuit draws a distinction between challenges based on improper service and substantive challenges by

11

out-of-state defendants. *See Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1303 (2d Cir.1990) (finding that defendant waived defense of improper service by participating in litigation without timely raising the personal jurisdiction issue, but noting that "[t]his is not a case where a defendant is contesting personal jurisdiction on the ground that long-arm jurisdiction is not available. We would be slower to find waiver by a defendant wishing to contest whether it was obliged to defend in a distant court."). Here, as in *Datskow*, Pilgrim is challenging personal jurisdiction on the basis that he is being obliged to defend himself in a distant court.

Second, the defendants in *Taveras* and *Feola* actively participated in the lawsuits before raising any jurisdictional challenges. *See Taveras*, 108 A.D.3d at 617 (indicating that defendants moved for summary judgment and to dismiss for lack of personal jurisdiction simultaneously, after appearing for depositions); *Feola* 173 A.D.2d at 256. Here, Pilgrim raised the personal jurisdiction issue at his earliest opportunity—it was his first affirmative defense in his answer to Prospect's original complaint. Doc. 5 ¶ 1. Because Pilgrim is in a markedly different position from the defendants in *Taveras* and *Feola*, the Court finds that his participation in this action is not the kind of conduct that New York courts have found to be indicative of an intention to submit to jurisdiction.

Moreover, to the extent that Prospect intended to allude to Second Circuit case law regarding forfeiture of personal jurisdiction defenses as a result of undue delay,[5] that line of cases is unavailing. Pilgrim filed his Rule 12(c) motion arguing, *inter alia*, lack of personal jurisdiction in July 2016, approximately 13 months after filing his Answer to the Complaint. In

---

[5] The Second Circuit has held that a "delay in challenging personal jurisdiction by motion to dismiss" may result in waiver, "even where . . . the defense was asserted in a timely answer." *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60 (2d Cir. 1999) (citing *Datskow v. Teledyne, Inc.,* 899 F.2d 1298, 1303 (2d Cir.1990)). When defendants engage in substantial pretrial activity over a lengthy period of time and forego opportunities to litigate the question of personal jurisdiction, they forfeit any personal jurisdiction defense they may have had. *Id.* at 61–62. On the other hand, "limited participation in pretrial proceedings does not result in waiver of the defense." *Arthur Williams, Inc. v. Helbig*, No. 00 Civ. 2169, 2001 WL 536946, at *3 (S.D.N.Y. May 21, 2001).

the interim, the parties participated in a single status conference before the Court and conducted some discovery, including Pilgrim's deposition. The Court finds that Pilgrim's delay in bringing his motion does not rise to the level of egregiousness that courts in this Circuit have found sufficient to constitute forfeiture. *See, e.g., Allgaier v. Peterson*, No. 13 Civ. 5112 (VB), 2015 WL 5459808, at *3–4 (S.D.N.Y. Aug. 13, 2015) (finding that defendants forfeited personal jurisdiction defense where they attended eleven court conferences and a mediation session, completed discovery on the merits, and waited approximately 18 months after filing the Answer to move to dismiss for lack of personal jurisdiction); *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) (concluding that the defendant had forfeited its defense of lack of personal jurisdiction, which had been asserted in its answer, "by participating in extensive pretrial proceedings and foregoing numerous opportunities to move to dismiss during the four-year interval that followed its inclusion of the defense in the answer.").

For these reasons, the Court finds that Prospect has failed to plead facts sufficient for a prima facie showing of jurisdiction. Accordingly, Pilgrim's motion to dismiss for lack of personal jurisdiction is GRANTED.

### B. <u>Rule 15(a) Motion to Amend</u>

Prospect seeks to Amend its complaint to include a claim for tortious interference with contractual relations against Pilgrim. Doc. 63. Pilgrim argues that allowing Prospect to amend its complaint to add a claim for tortious interference would be an "exercise in futility." Doc. 62 at 3. "Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting

13

therefrom." *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir.2006) (internal quotation marks and citations omitted). Here, for purposes of this motion, it is undisputed that a contract existed between Prospect and Vinson, that Pilgrim was aware of the contract before he disbursed the settlement money, that the contract was breached, and that Prospect sustained damages. Consequently, the only issue is whether Prospect's proposed pleading sufficiently alleges that Pilgrim intentionally and improperly procured Vinson's breach.

To satisfy this element, it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead a plaintiff must allege facts showing that "the defendant's *objective* was to procure such a breach." *See Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 221 (S.D.N.Y. 2013) (emphasis added); *see also High Falls Brewing Co., LLC v. Boston Beer Corp.,* 513 Fed. Appx. 12, 13 (2d Cir. 2013) (affirming denial of leave to amend claim of tortious interference because proposed pleading did not show that "the target of [defendant's] conduct was [the third party's] contractual arrangements with" the plaintiff) (internal quotation marks and citation omitted). In other words, a defendant must specifically intend to interfere with the relevant contract. *Am. Cyanamid Co. v. Elizabeth Arden Sales Corp.,* 331 F. Supp. 597, 608 (S.D.N.Y.1971).

Prospect asserts that it discovered new facts during Pilgrim's deposition that support a claim for tortious interference: (1) Pilgrim knew of the Funding Agreements before disbursing the settlement money to Vinson, and (2) Vinson told Pilgrim that he did not want to pay Prospect as required under the Funding Agreements. *See* Doc. 66 at 9. Pilgrim's alleged interference, according to Prospect, was his "disbursement of [the settlement] funds with knowledge of the Agreements . . . ." *Id.* at 24.

Accepting the allegations in Prospect's proposed pleading as true and drawing all reasonable inferences in Prospect's favor, the Court finds that allowing Prospect to amend its complaint would be futile. Prospect's proposed pleading fails to sufficiently allege that Pilgrim intentionally procured Vinson's breach. Indeed, Prospect's proposed pleading ignores Pilgrim's intent altogether, and merely alleges that Pilgrim disbursed the settlement money knowing that the Funding Agreements existed and that Vinson did not want to pay Prospect. Even if factually true, the act of disbursing the settlement money with knowledge of Vinson's possible—or even likely—future breach does not amount to intentional procurement of the breach.

An illustration from comment n to the Restatement (Second) of Torts § 766 is particularly illuminating:

> n. *Making agreement with knowledge of the breach.* One does not induce another to commit a breach of contract with a third person . . . when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person. For instance, B is under contract to sell certain goods to C. He offers to sell them to A, who knows of the contract. A accepts the offer and receives the goods. A has not induced the breach and is not subject to liability under the rule stated in this Section.

As Prospect points out, this illustration is not directly on point because the alleged interference was not a conflicting contract between Pilgrim and Vinson. Nevertheless, comment n demonstrates that merely acting with knowledge that a third party may breach a contract with some other party is not sufficient to constitute procurement of the breach. Pilgrim may have been aware that Vinson intended to breach his contract with Prospect, but that alone does not imply that Pilgrim *targeted* the Funding Agreements.

The Court finds that Prospect's proposed pleading fails to sufficiently plead the element of intentional and improper procurement, and would therefore not withstand a Rule 12(b)(6)

motion to dismiss. For this reason, the Court denies without prejudice Prospect leave to amend on the basis of futility.

**V.  Conclusion**

For the reasons set forth above, Pilgrim's motion to dismiss is GRANTED and Prospect's motion to amend is DENIED without prejudice. The Clerk of the Court is respectfully directed to terminate the motions, Doc. 33 and Doc. 66.

It is SO ORDERED.

Dated: June 9, 2017
       New York, New York

                                              Edgardo Ramos, U.S.D.J.
                                              United States District Judge